UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-23822-MARTINEZ
MAGISTRATE JUDGE REID

DYMAR GOMEZ,

    Plaintiff,

v.

CORPORAL McGAHEE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE
## RE: DEFENDANTS' MOTION TO DISMISS [ECF No. 33]

### I.  Introduction

Plaintiff, **Dymar Gomez,** filed a *pro se* civil rights Complaint pursuant 42 U.S.C. § 1983 against Defendants Corporal McGahee, Sergeant Hodge, and Officer Hightower for alleged excessive force that occurred while he was in the custody of the Miami-Dade Department of Corrections and Rehabilitation ("MDCR"). [ECF No. 1]. Plaintiff is proceeding in this matter *in forma pauperis*. [ECF No. 7]. Defendants have now filed a Motion to Dismiss alleging that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [ECF No. 33].

This case has been referred to the Undersigned for issuance of all preliminary orders and recommendations to the District Court regarding dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Fla. Admin. Order 2019-02. [ECF No. 2]. Despite being instructed to do so by this Court, Plaintiff has failed to file a response to the Motion to Dismiss. [ECF No. 34]. For the reasons discussed below, the Motion to Dismiss [ECF No. 33] should be **GRANTED**.

## II. Factual Allegations

The Court previously summarized the factual allegations in the Complaint as follows:

Plaintiff alleges that on August 23, 2019, between 7:00 a.m. and 8:30 a.m. at Metro West Detention Center, "[S]MO South Cell MW137[,] . . ." Corporal C. McGahee, Officer Hightower, and Sergeant Hodge "[e]ntered [his] cell for no reason after [he] was already handcuffed and [he] had just entered [his] cell after . . . morning headcount [for] cell check." [*Id*. pp. 2-3]. Plaintiff contends that Defendants used unjustified excessive force against him and "[p]unched, choked, and kicked [him] simultaneously[,] knocking [him] on the floor inside [his] cell . . . while [he] was handcuffed . . . ." [*Id*. p. 3].

Plaintiff alleges that a camera will show that he was still handcuffed when Defendants entered his cell. [Id.]. Plaintiff further alleges that after the application of force, he was physically forced out of his cell and into an interview room, where he stayed for about fifteen minutes. [Id.]. Plaintiff contends that the interview room "[w]as smeared with blood from [his] injuries." [Id.].

Plaintiff then alleges that he was taken out of the interview room and back to his cell and "[n]eglected emergent medical attention for open cuts to [his] wrist and swelling to [his] head (sic)." [Id.]. Lastly, Plaintiff alleges that after some time, he was taken to medical by Officer Green, an individual not named as a defendant in this case, and was "[t]reated for cuts and swelling to [his] head and given pain medication." [Id.].

In summary, Plaintiff contends that Defendants violated his rights under the Eighth Amendment of the United States Constitution by their purported use of excessive force, and caused him "[p]ain, suffering, physical injury, and emotional distress." [Id. p. 4].

Plaintiff seeks "[d]amages in the amount of $250,000 against each [D]efendant[,] jointly and [severally]." [Id.]. Plaintiff also seeks "[a] declaration that the acts or omissions described herein violate his right[s] under the constitution and laws of the United States." Lastly, Plaintiff seeks a "[p]reliminary and permanent injunction ordering Defendants . . . to cease their physical violence and threats toward Plaintiff . . . ." [*Id*.].

[ECF No. 12].

Based on these facts, the District Court permitted Plaintiff's excessive force claim against the Defendants to proceed. [ECF No. 16].

## III. Discussion

A. Applicable Law and Procedures

The PLRA requires an inmate to exhaust administrative remedies before filing a civil rights action. *See* 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement is mandatory and there is no discretion to waive it. *See id.* The PLRA requires proper exhaustion, which means a prisoner must comply with the procedural rules and deadlines of the institution's grievance system. *See Woodford v. Ngo*, 548 U.S. 81 (2006).

The current exhaustion requirement was designed to reduce the quantity and improve the quality of prisoner suits and affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case; and in some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. *See Porter*, 534 U.S. at 516-17. In other instances, the internal review might filter out some frivolous claims; and for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. *See id.* at 517.

There are no futility or inadequacy exceptions to the PLRA's mandatory exhaustion requirement. *See Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998). A prisoner must exhaust all administrative remedies that are available before filing suit, regardless of their adequacy. *See id.* at 1325-26. For instance, an inmate who is seeking money damages as relief from defendants in a lawsuit must exhaust all administrative remedies before filing suit, even if money damages are not available as relief through the jail/prison grievance procedure. *See id.*

The Eleventh Circuit has held that exhaustion of administrative remedies is a matter in abatement and not an adjudication on the merits; and, therefore, an exhaustion defense is not properly raised in a motion for summary judgment, but it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368,

1375 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1998) (internal quotation marks omitted))). The Court further explained that even though motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b), federal courts have traditionally "entertained certain pre-answer motions that are not expressly provided for by the rules." *Id.* (quoting *Ritza*, 837 F.2d at 369) (internal quotation marks omitted). The Court went on to state that exhaustion of administrative remedies is a matter of judicial administration and held that exhaustion should be decided on a Rule 12(b) motion to dismiss. *See id.* (citing *Johnson v. Meadows*, 418 F.3d 1152, 1153-54 (11th Cir. 2005). Where exhaustion is treated as a matter in abatement, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record." *Id.* (citing *Ritza*, 837 F.2d at 369).

  The Eleventh Circuit has explained that:

> [w]hen deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendant's versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. "If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)(*citing Bryant*, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make "specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (*citing Bryant*, 530 F.3d 1373-74, 1376).

*Myles v. Miami-Dade Cnty. Corr. & Rehab. Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012).

  A prisoner who wishes to exhaust his administrative remedies while in the custody of MDCR must adhere to the procedures outlined in MDCR Departmental Standard Operating Procedure ("D.S.O.P.") No. 15-001 ("Inmate Complaint/Grievance Process"). [ECF No. 33-5]. These procedures provide that inmates shall submit a completed Inmate Grievance form to MDCR

4

staff within 10 workdays of the relevant incident. [*Id*. § VI(C)]. This procedure is also explained in the inmate handbook. [ECF No. 33-6, § VI(C)].

The administrative procedures, as reflected in the Inmate Complaint/Grievance Process, further set forth that an inmate who remains unsatisfied after a grievance resolution shall appeal the grievance decision. Section XIII of the Inmate Complaint/ Grievance Process states:

> Inmates have the right to appeal a grievance response. Inmates may request an Inmate Grievance Appeal form from staff and shall receive it immediately upon request. Inmates shall complete and submit the form within two work days from receipt of the grievance response.

[ECF No. 33-5, § XIII]. At that point, the appeal is reviewed by the appropriate MDCR Division Chief or Inmate Medical Provider (IMP) Director, whose decision is final and there is no further appeal. [*Id*.]. In other words, pursuant to MDCR procedures, administrative exhaustion is a two-step process—a grievance must be filed, and, if an inmate is not satisfied with the resolution of that grievance, the inmate must appeal the decision to complete the administrative process.

B. <u>Analysis</u>

As discussed above, Plaintiff failed to file a response to the Defendants' Motion to Dismiss despite being ordered to do so by the Court. [ECF No. 34]. Nevertheless, in his sworn Complaint, he briefly stated that he "used the prison grievance procedure available at the Metro-West Detention Center to try and solve the problem that occurred on August 23, 2019," but that he "got no response." [ECF No. 1 at 3].

Defendants, on the other hand, assert that (1) Plaintiff filed the Complaint here a week before he submitted any grievance about the incident; (2) the grievance he did submit was submitted outside of MDCR's ten-workday deadline; and (3) even after the grievance was rejected as untimely, Plaintiff failed to file an appeal. [ECF No. 33 at 3]. Therefore, the parties' versions of the facts conflict. When accepting Plaintiff's allegations regarding exhaustion as true, as the

5

Court is required to do so when there is a conflict between the parties' assertions of fact, the Complaint is not subject to dismissal for failure to exhaust administrative remedies. *See Myles*, 476 F. App'x at 366.

However, the Complaint is nevertheless due to be dismissed because the factual evidence provided by the Defendant attached to their Motion establishes that Plaintiff failed to follow proper MDCR procedures for exhausting his administrative remedies. As asserted by the Defendants, although Plaintiff submitted a grievance about the incident, he did not do so prior to filing the Complaint here. [ECF No. 33-11]. Specifically, grievance no. MW19-09095, which involved the alleged excessive force by the Defendants, was submitted on September 18, 2019, nearly a week after Plaintiff filed his Complaint on September 13, 2019. [ECF Nos. 1, 33-11]. This grievance was denied as untimely because it was filed more than ten days after the alleged excessive force on August 23, 2019. [ECF No. 33-11 at 2]. Thus, the grievance did not comply with the applicable MDCR procedure regarding the timing of filing grievances. [*Id.*].

Furthermore, a sworn declaration from MDCR employee Joel Botner demonstrates that Plaintiff did not file an appeal of the denial of his grievance as required by the MDCR D.S.O.P. 15-001, even though he successfully file an appeal regarding a separate, unrelated grievance. [ECF No. 33-10]; *see also* [ECF No. 33-12]. This assertion is also supported by a copy of Plaintiff's grievance log which shows that he only appealed the denial of one grievance, which did not involve the incident involving the allegations in the Complaint. [ECF No. 33-8]. Accordingly, because Plaintiff failed to timely file a grievance about this incident, and because he further failed to appeal the denial of his untimely grievance, he failed to exhaust his administrative remedies prior to filing this lawsuit.

The only remaining question then with respect to this issue is whether this action should be dismissed with or without prejudice. In *Bryant*, where the Eleventh Circuit stated in a footnote that dismissal for failure to exhaust administrative remedies with prejudice could be appropriate in certain circumstances, including where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Bryant*, 530 F.3d at 1375 n. 11 (citing *Berry v. Kerik*, 366 F.3d 85 (2d Cir. 2004)).

Here, the Defendant asserts that this action should be dismissed *with prejudice*. Plaintiff is no longer in MDCR custody and no special circumstances justify his failure to exhaust his administrative remedies in this case despite having ample opportunity to do so. Accordingly, this action is due be dismissed for failure to exhaust administrative remedies with prejudice.

## IV.     Conclusion

It is, therefore, **RECOMMENDED** that the Defendant's Motion to Dismiss [ECF No. 33] be **GRANTED**, and that this action be dismissed with prejudice.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**SIGNED** at Miami, Florida, this 9th day of December, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc: **Dymar Gomez**
M55265
Wakulla Correctional Institution
Inmate Mail/Parcels
110 Melaleuca Drive
Crawfordville, FL 32327
*PRO SE*

**Zachary Edward Vosseler**
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, FL 33128
Email: zach@miamidade.gov